IN THE SUPREME COURT OF NORTH CAROLINA

2022-NCSC-33

No. 90A21

Filed 18 March 2022

IN THE MATTER OF: C.S.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) (2019) from an order entered on 8 December 2020 by Judge Clinton Rowe in District Court, Carteret County. This matter was calendared for argument in the Supreme Court on 18 February 2022 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*Stephanie Sonzogni for petitioner-appellee Carteret County Department of Social Services; and William L. Esser IV for appellee Guardian ad Litem.*

*Jeffrey L. Miller for respondent-appellant father.*

BARRINGER, Justice.

¶ 1    Respondent appeals from an order terminating his parental rights to the minor child C.S. (Carl).[1] After careful review, we hold that the trial court did not err in finding past neglect or in determining that there was a likelihood of future neglect

---

[1] A pseudonym is used in this opinion to protect the juvenile's identity and for ease of reading.

and that terminating respondent's rights was in Carl's best interests. Accordingly, we affirm the trial court's order terminating respondent's parental rights.

## I. Factual and Procedural Background

When Carl was born, although Carl's mother was married, her estranged husband denied paternity. Subsequent genetic testing excluded the estranged husband as Carl's biological father.

A social worker from Carteret County Department of Social Services (DSS) visited the family and found that Carl appeared thin. The social worker scheduled a weight check at Carteret General Hospital. At the weight check, Carl weighed 12.5% less than he did at birth. Carl was hospitalized and quickly gained weight, causing the doctor to opine that his failure to thrive was due to receiving insufficient calories. However, Carl's mother refused to nurse, pump, or wake up at night to feed him. DSS filed a juvenile petition alleging that Carl was neglected and dependent. Additionally, DSS obtained nonsecure custody of Carl and placed him in foster care.

Carl's mother identified respondent as the potential father of Carl. A paternity test confirmed that respondent was Carl's biological father. The trial court entered a consent adjudication order, signed by respondent and his attorney, as well as the other relevant parties, adjudicating Carl a neglected and dependent juvenile. Carl's mother later relinquished her parental rights to Carl.

¶ 5        Following a hearing that respondent did not attend, the trial court established a primary plan for Carl of reunification with a secondary plan of adoption. Respondent was ordered to refrain from using nonprescribed and illegal substances; submit to random drug screens; complete a substance abuse assessment and follow all recommendations; complete a parenting assessment/psychological evaluation and follow all recommendations; complete parenting classes; maintain stable housing; provide proof of employment and a budget; keep his social worker updated with pertinent information; and sign necessary releases to allow DSS to access information from the required assessments and related records. The trial court granted respondent one hour of weekly supervised visitation with Carl.

¶ 6        Respondent failed to attend the initial review hearing held on 14 June 2019. In the resulting order, the trial court noted that respondent was failing to engage in the reunification plan, was failing to consistently attend visitations, had not been communicating with his social worker, and had missed a scheduled Child and Family Team Meeting. Afterwards, respondent continued to not follow through with any of the services outlined in his reunification plan and, on 25 June 2019, was arrested for violating a domestic violence protective order. On 28 August 2019, the trial court changed Carl's primary permanent plan to adoption with a secondary plan of reunification with respondent.

¶ 7 Respondent finally attended his first Child and Family Team meeting after the trial court changed Carl's permanent plan to adoption. Additionally, after the permanent plan changed, respondent started to attend visitations with Carl more consistently. Yet, at the visits, respondent spent considerable time viewing and taking pictures of Carl's genitals and bottom during diaper changes. After being instructed to refrain from photographing Carl's genitals, respondent complained and stopped changing Carl's diaper during visitations. Respondent also ignored the social worker's attempts to redirect or instruct him regarding Carl's needs and often failed to provide appropriate food or supplies at visits. After several weeks of visitations during which the social worker attempted to instruct him on appropriate behaviors and interactions with Carl, respondent engaged less with Carl during the visits.

¶ 8 In a subsequent permanency-planning-review order, the trial court again found respondent had failed to make sufficient progress towards reunification. The trial court found that respondent had recently been charged with rape; had taken photographs of his son's genital area on numerous visitations; had failed to complete the recommended mental health and substance abuse treatment or to complete a parenting evaluation; lacked safe, stable, and long-term housing; had failed to provide DSS with a current address, employment verification, or a budget; and had otherwise failed to maintain consistent contact with DSS. The trial court concluded that it was in Carl's best interests that the primary plan be adoption with a secondary

plan of reunification and that termination of parental rights was required to effectuate this plan.

¶ 9        On 19 November 2019, DSS filed a motion to terminate respondent's parental rights to Carl on the grounds of neglect, failure to pay a reasonable portion of the costs of care for Carl for the preceding six months, and dependency. *See* N.C.G.S. § 7B-1111(a)(1), (3), (6) (2021). The trial court entered an order terminating respondent's parental rights on 8 December 2020. In the order, the trial court adjudicated that a ground existed to terminate respondent's parental rights for neglect under N.C.G.S. § 7B-1111(a)(1). The trial court further determined that terminating respondent's rights was in Carl's best interests.

¶ 10       Respondent appealed. On appeal, respondent challenges the trial court's adjudication that the ground of neglect existed to terminate his parental rights pursuant to N.C.G.S. § 7B-1111(a)(1) as well as the trial court's determination that termination was in Carl's best interests.

## II.    Analysis

### A.  Standard of Review

¶ 11       The North Carolina Juvenile Code sets out a two-step process for termination of parental rights: an adjudicatory stage and a dispositional stage. N.C.G.S. §§ 7B-1109 to -1110 (2021). At the adjudicatory stage, the trial court takes evidence, finds facts, and adjudicates the existence or nonexistence of the grounds for termination

set forth in N.C.G.S. § 7B-1111. N.C.G.S. § 7B-1109(e). If the trial court adjudicates that one or more grounds exist, the trial court then proceeds to the dispositional stage where it determines whether termination of parental rights is in the juvenile's best interests. N.C.G.S. § 7B-1110(a).

¶ 12 Appellate courts review a trial court's adjudication to determine whether the findings are supported by clear, cogent, and convincing evidence and whether the findings support the conclusions of law. *In re N.P.*, 374 N.C. 61, 62–63 (2020). In doing so, we limit our review to "only those findings necessary to support the trial court's determination that grounds existed to terminate respondent's parental rights." *In re T.N.H.*, 372 N.C. 403, 407 (2019). "A trial court's finding of fact that is supported by clear, cogent, and convincing evidence is deemed conclusive even if the record contains evidence that would support a contrary finding." *In re B.O.A.*, 372 N.C. 372, 379 (2019). Further, "[f]indings of fact not challenged by respondent are deemed supported by competent evidence and are binding on appeal." *In re T.N.H.*, 372 N.C. at 407. We review the trial court's conclusions of law de novo. *In re C.B.C.*, 373 N.C. 16, 19 (2019).

¶ 13 "The [trial] court's assessment of a juvenile's best interest at the dispositional stage is reviewed only for abuse of discretion." *In re A.R.A.*, 373 N.C. 190, 199 (2019). "[A]buse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision."

*Id.* (alteration in original) (quoting *In re T.L.H.*, 368 N.C. 101, 107 (2015)).

**B. Neglect**

The trial court concluded that a ground existed to terminate respondent's parental rights to Carl for neglect under N.C.G.S. § 7B-1111(a)(1). The Juvenile Code authorizes the trial court to terminate parental rights if "[t]he parent has abused or neglected the juvenile" as defined in N.C.G.S. § 7B-101. N.C.G.S. § 7B-1111(a)(1). A neglected juvenile is defined, in pertinent part, as a juvenile "whose parent . . . [d]oes not provide proper care, supervision, or discipline . . . [or c]reates or allows to be created a living environment that is injurious to the juvenile's welfare." N.C.G.S. § 7B-101(15) (2021). "[I]f the child has been separated from the parent for a long period of time, there must be a showing of past neglect and a likelihood of future neglect by the parent." *In re D.L.W.*, 368 N.C. 835, 843 (2016). "A parent's failure to make progress in completing a case plan is indicative of a likelihood of future neglect." *In re M.A.*, 374 N.C. 865, 870 (2020) (cleaned up).

Respondent asserts that the trial court had no foundation for finding past neglect in finding of fact one—that "[respondent] has neglected the juvenile." According to respondent, the trial court could not have found past neglect when there was no evidence that respondent had custody of Carl in the past or was responsible for any neglect Carl experienced. Respondent argues that the trial court wrongly considered respondent's incompletion of his case plan as evidence of past neglect.

Without a finding of past neglect, respondent further contends that the trial court could not have relied on the incompletion of his case plan to determine that there was a likelihood of future neglect.

This Court has long recognized that "evidence of neglect by a parent prior to losing custody of a child—including an adjudication of such neglect—is admissible in subsequent proceedings to terminate parental rights." *In re Ballard*, 311 N.C. 708, 715 (1984). In subsequent cases, we clarified that "[i]t is . . . not necessary that the parent whose rights are subject to termination be responsible for the prior adjudication of neglect." *In re J.M.J.-J.*, 374 N.C. 553, 565 (2020). Here, there was a prior adjudication of neglect. The trial court both took judicial notice of this prior adjudication of neglect and admitted it into evidence. Respondent never objected, either to the original adjudication or to its admission into evidence. Accordingly, the trial court did not err in finding past neglect in this case.

Outside of arguing that a trial court cannot determine that there is a likelihood of future neglect without first finding that the respondent himself neglected the child in the past, respondent does not otherwise challenge the trial court's determination in this case that there was a "substantial probability of a repetition of neglect." Having overruled respondent's arguments concerning past neglect, there remains no other challenge to the trial court's determination that there was a likelihood of future

neglect. Therefore, we affirm the trial court's adjudication that the ground of neglect existed in this case.

## C. Best Interests

At the dispositional stage of a termination proceeding, the trial court determines whether terminating the parent's rights is in the child's best interests. N.C.G.S. § 7B-1110(a). "The [trial] court may consider any evidence, including hearsay evidence as defined in [N.C.]G.S. [§] 8C-1, Rule 801, that the [trial] court finds to be relevant, reliable, and necessary to determine the best interests of the juvenile." *Id.*

Additionally, the trial court must

> consider the following criteria and make written findings regarding the following that are relevant:
>
> (1)  The age of the juvenile.
>
> (2)  The likelihood of adoption of the juvenile.
>
> (3)  Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
>
> (4)  The bond between the juvenile and the parent.
>
> (5)  The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
>
> (6)  Any relevant consideration.

*Id.* Although the statute requires the trial court to consider each of the statutory

factors, the trial court is only required to make written findings regarding those factors that are relevant. *In re A.R.A.*, 373 N.C. at 199. A factor is relevant if there is conflicting evidence concerning that factor. *Id.* If supported by the evidence received during the termination hearing or not specifically challenged on appeal, the trial court's dispositional findings are binding on appeal. *In re S.C.C.*, 379 N.C. 303, 2021-NCSC-144, ¶ 22.

¶ 20    Respondent argues that the trial court abused its discretion in terminating his parental rights because it failed to make findings concerning all of the factors relevant to Carl's best interests; specifically, a finding regarding respondent's bond with Carl pursuant to N.C.G.S. § 7B-1110(a)(4). Respondent argues that there was conflicting evidence in this case concerning the bond between respondent and Carl.

¶ 21    Here, the trial court explicitly found that "[respondent] obviously loves [Carl]." This finding shows that the trial court considered respondent's bond with Carl. Moreover, this finding was made in the context of the trial court considering other relevant facts. The trial court found that "[Carl] would benefit from the stability and love of a permanent family. While [respondent] obviously loves [Carl], he is not in a position to meet [Carl's] needs in a safe, nurturing, and stable environment." This Court has previously held that the trial court adequately addresses the parent-child bond when it finds "that any previous bond or relationship with the [respondent parent i]s outweighed by [the child's] need for permanence." *In re A.R.A.*, 373 N.C. at

200. Here, the trial court found that Carl had a "very" strong bond with his foster parents, having spent most of his life with them. These findings reflect that the trial court considered Carl's bond with his father, and the trial court did not abuse its discretion in determining it was in Carl's best interests to terminate respondent's parental rights.

## III. Conclusion

The trial court did not err when it adjudicated that a ground existed to terminate respondent's parental rights pursuant to N.C.G.S. § 7B-1111(a)(1). Nor did the trial court abuse its discretion when it determined that the termination of respondent's parental rights was in Carl's best interests. Accordingly, we affirm the order terminating respondent's parental rights.

AFFIRMED.